CHRISTOF MEIDINGER, Respondent, v. SECURITY STATE BANK OF MEDINA, NORTH DAKOTA, A Corporation, Appellant.

(213 N. W. 850.)

**Homestead — exists after death of husband or wife for survivor.**

    1. The homestead estate is for the protection of the family, and when once established it continues to exist after the death of the husband or wife for the benefit of the surviving husband or wife or minor children.

---

Annotation.—(1) On right of surviving spouse to occupy homestead, see 13 R. C. L. 665; 3 R. C. L. Supp. 71; 5 R. C. L. Supp. 705.

(3) Temporary absence from homestead on account of illness not abandonment, see 13 R. C. L. 649; 4 R. C. L. Supp. 825; 6 R. C. L. Supp. 769.

**Homestead — title — deceased husband or wife—exists for survivor.**

2. Section 5627, is intended to preserve the homestead right when the title thereto is in the deceased husband or wife. The survivor does not need that protection if he has the title. In such case he has not a life interest in the property as provided in § 5627 but he is the owner in fee, and the homestead status having been established during his married life, it continues to exist after the death of his wife, unless voluntarily abandoned.

**Homestead — death of wife — helpless surviving husband — lives with relatives — homestead not abandoned.**

3. Where a homestead has been established and occupied as a homestead by man and wife, the wife dies, and it is necessary to take the husband to the home of his son-in-law on account of his physical and mental infirmities, extreme age, and childishness, and for more than a year he is cared for in the homes of his sons-in-law, such absence is not voluntary, and is not an abandonment of the homestead estate.

Opinion filed April 7, 1927.

Homesteads, 29, C. J. § 2 p. 783 n. 14; § 25 p. 791 n. 47, 48; § 344 p. 932 n. 86, 87; § 356, p. 939 n. 71, 72; p. 940 n. 86 New; § 470 p. 994 n. 18; § 490 p. 1003 n. 94.

Appeal from the District Court of Stutsman County, North Dakota, *Jansonius,* J.

Affirmed.

*Carr & Rittgers,* for appellant.

*M. C. Freerks,* for respondent.

BURKE, J. This is an action to determine the homestead right to lots five and six, in block five, in the original plat of the town, now the village, of Medina, in Stutsman county, North Dakota, and declare the same free from an attachment and judgment lien obtained against the plaintiff, by the defendant.

The case was tried to the court, and upon findings of fact and conclusions of law favorable to the plaintiff, judgment was duly entered adjudging the plaintiff to be the absolute owner of said property, which in area is less than three acres, and in value, does not exceed $900, and which has been for fifteen years last past, the homestead of the plaintiff, and that the judgment and attachment are not liens against said premises so long as plaintiff's homestead right continues to exist.

The defendant appeals to this court for a trial de novo. It is the

contention of the defendant, first, that the plaintiff is a single man, a widower with no dependents, that he does not occupy the premises claimed as a homestead, and is therefore not entitled to a homestead. Second, that if he was entitled to a homestead on the death of his wife, the homestead has been abandoned. There is no dispute in the evidence, it appears clearly therefrom, that the plaintiff is the owner of the property and that it was occupied as a homestead by the plaintiff and his wife for a period of about fifteen years.

In 1924 the plaintiff's wife died, and at the time of the trial of this action in December, 1925, the plaintiff was 83 years old. He had no other property and no other source of income; he was in poor health, unable to work, and take care of himself, on account of his physical ailments, extreme age, and childishness. The house was rented by his son-in-law for $10 a month and the plaintiff was taken to the home of his son-in-law Jacob Rembold. What furniture was in the house, with the exception of one old stove was sold at public auction without consulting the plaintiff, but most of the proceeds were turned over to him.

The trial court found that the plaintiff had not abandoned his homestead and it is our opinion that the evidence justifies the finding. It is true that the plaintiff has not lived in the house since his wife died, that he has continuously lived with one or the other of his sons-in-law since his wife's death, but such residence was not voluntary. He lived with his sons-in-law because of absolute necessity. Suppose it had been necessary to take him to a hospital for treatment, and he was necessarily detained there for a long time, for the proper treatment of his physical infirmities, could it be said that that was an abandonment of his homestead right, and if that would not be an abondonment, it cannot be said, that the taking of this old man to the home of his son-in-law for the purpose of taking care of him, when he was not able to take care of himself, was an abandonment of his homestead right.

In the case of O'Hare v. Bismarck Bank, 45 N. D. 641, 178 N. W. 1017, relied upon by the defendant, this court held: that there had been an abandonment of the homestead. It does not appear in that case, that it was necessary for the homestead claimant to leave the homestead dwelling on account of her incapacity to take care of herself, but on the contrary, a majority of the court were of the opinion that she without cause voluntarily abandoned her homestead. In the case at bar, it ap-

pears clearly from the evidence that the removal of the plaintiff to the home of his son-in-law was an absolute necessity, and not a voluntary act upon the part of the plaintiff.

It is the contention of the defendant that the plaintiff cannot claim a homestead right, under § 5627 Comp. Laws, 1913, for the reason, that the title to this property was in the plaintiff's name, when his wife died, and that said section applies only when the title is in the name of the person who dies, and in such case the homestead shall survive and descend to the surviving husband or wife for life, that is, if this property had belonged to the plaintiff's wife he would have a homestead interest in it, but since it belonged to the plaintiff he has no homestead, although it was the homestead of the plaintiff and his wife prior to his wife's death.

In the case of Healy v. Bismarck Bank, 30 N. D. 628, 153 N. W. 392, this court held—that "it is immaterial whether the title to the property which is used as a homestead, is in the name of the wife or in that of the husband, and the property which was held in the name of the wife, but which was occupied as a home may be claimed by the wife after the death of her husband as a homestead."

In the case of Bremseth v. Olson, 16 N. D. 242, 13 L.R.A.(N.S.) 170, 112 N. W. 1056, 14 Ann. Cas. 1155, it was claimed, that the husband was not entitled to a homestead for the reason, that the title was in the name of his deceased wife, and this court said, "The fact that the legal title to this property was in the name of Mrs. Bremseth did not make it any the less the homestead of Mr. Bremseth. . . . Respondents contention to the effect that the head of a family cannot claim such homestead unless he has the legal title is clearly unsound. . . . It is immaterial in whom the legal title is vested provided it is the home of the family." "It cannot possibly concern the creditor whether the title is in the husband or wife."

In O'Hare v. Bismarck Bank, 45 N. D. 644, 178 N. W. 1018, this court said: "When the surviving wife is the owner in fee of the homestead, her title and interest is not in any manner affected by the death of her husband. The probate court had no jurisdiction to set off or in any manner interfere with her homestead."

Section 5627, is intended to preserve the homestead right when the title thereto is in the deceased husband or wife. The survivor does not

need that protection if he has the title. In such case he has not a life interest in the property as provided in section 5627, but he is the owner in fee, and the homestead status having been established during his married life, it continues to exist after the death of his wife, unless voluntarily abandoned. But if the husband or wife who holds the legal title dies, the creditors cannot touch the homestead for in such case under section 5627, supra, the homestead right survives, and descends to the surviving husband or wife for life, and to the children until the youngest child becomes of age. It seems to be the intent of the law to protect the homestead right against every contingency.

Under § 5629, Comp. Laws, 1913, if the homestead has not been declared before the death of the owner, the county court must ascertain and set off the homestead to the surviving husband or wife, or minor child, or children. Under section 5606, it may be selected from the separate property of the husband or wife, or by a single man, if he is the head of a family. It cannot be conveyed or incumbered except by both husband and wife signing and acknowledging the same instrument. Section 5608. The will of a testator is subject to it. Section 5632. The real property subjected to the homestead may descend or be distributed to the surviving husband or wife, or to the decedent's heirs in the direct descending line free of the decedent's debts. Section 5631. If sold the proceeds are exempt. Section 5620. Sexton v. Sutherland, 37 N. D. 506, 164 N. W. 278; Cullen v. Sullivan, 51 N. D. 384, 199 N. W. 760.

The homestead estate is for the protection of the family and when once established it continues to exist after the death of the husband or wife for the benefit of the surviving husband or wife or minor children, as said by the Massachusetts court in Doyle v. Coburn, 6 Allen, 71.

"Although a homestead cannot be acquired except by a householder having a family, yet, when once acquired and still occupied by him, it has been held not to be defeated or lost by the death or absence of his wife and children. . . . Any other construction would render a husband who has been deprived of his family by accident or disease or by desertion without any fault of his liable to be instantly turned out of his homestead by his creditors." Silloway v. Brown, 12 Allen, 34. See also Weaver v. First Nat. Bank, 16 L.R.A.(N.S.) 110, and note (76 Kan. 540, 123 Am. St. Rep. 155, 94 Pac. 273); Dougherty v. White,

112 Neb. 675, 36 A.L.R. 425, 200 N. W. 884; Tomlinson v. Kandiyohi County Bank, 162 Minn. 230, 202 N. W. 494; 13 R. C. L. pp. 666, et seq.; 29 C. J. p. 791.

The property involved in this action is the homestead of the plaintiff, and the judgment is affirmed.

BIRDZELL, Ch. J., and NUESSLE and CHRISTIANSON, JJ., concur.

BURR, J., did not participate; Honorable C. W. BUTTZ, Judge of the Second Judicial District, sitting in his stead.

BUTTZ, Dist. J. (dissenting). I cannot subscribe to the reasoning of either Healy v. Bismarck Bank, 30 N. D. 628, 153 N. W. 392, or the instant case. The decision in the Healy Case was apparently based on § 8723, Comp. Laws, 1913, which reads: "Upon the death of either the husband or wife, the survivor, so long as he or she do not again marry, may continue to possess and occupy the whole homestead . . . ," which homestead, it is further provided, shall be ascertained and set off by the county court during the probate of the estate.

As I read the opinion of the court in the case at bar it does not adhere to the reasoning of the Healy case so far as § 8723 is concerned. That the principle announced ought not be based on that statute I wholly agree. The fee title being in the plaintiff herein,—not in the deceased but in the surviving spouse,—the county court has no jurisdiction under this statute. That court has probate jurisdiction only, and this is a probate statute. If § 8723 is to be given effect it must be by operating on a title once held by a person now deceased, not on that of one still living; the county court cannot exercise jurisdiction over the property of a mature or sane living person. Only when the fee is in the deceased spouse can this section be given effect. Such appears to have been the reasoning of the opinion in O'Hare v. Bismarck Bank, 45 N. D. 641, see pp. 644, 645, 178 N. W. 1017.

The present decision is based on the broad ground that "the homestead status having been established during his married life, it continues to exist after the death of his wife unless voluntarily abandoned," even though there be no minor children or other dependents. This is to my mind a strained and unwarranted construction of our homestead

law.   Section 208 of the state Constitution provides for "wholesome laws, exempting from forced sale to *all heads of families* a homestead . . . ."   Obeying this mandate, the legislature has by appropriate laws (Comp. Laws, 1913, § 5605, and amendments) limited and defined the value and extent of the homestead of every *"head of a family"* and § 5626, Comp. Laws, 1913, has defined the term "head of a family" as (1) "the husband or wife when the claimant is a married person," and (2) "every person who has residing on the premises with him or her and under his or her care and maintenance" certain classes of persons named.   Only by reason of being the "head of a family" as thus defined did plaintiff in the first instance acquire a homestead exemption in his fee estate.   No longer a married man, no longer the father of minor children, no longer having under his "care and maintenance" any dependents, may this plaintiff claim a homestead exemption out of property the fee title to which is in him?

Our constitutional and statutory exemption provisions are plainly intended to protect the family to the end that it may not be without a home or opportunity for self support.   When the family ceases to exist, so does the reason for the homestead exemption and the homestead estate itself.   A family is a collection of individuals; one person alone is not a family.   The policy and scope of our exemption laws within the constitutional limit lies with the legislature; if there should be greater liberality that department of the government alone is authorized to speak.   However great the misfortune of a surviving spouse that he be left without a homestead right because of the death or desertion of family, such misfortune should be the thought of the legislature and its remedy left to that body.   If the legislature has seen fit to adopt a public policy differing from what we may feel that policy should be, or if through inadvertence it has failed to act, the court ought not to supplant that body by revamping its production or supplying its deficiencies.

That a surviving spouse, although remaining a single person, and being without minor children or dependents, may hold a homestead *estate* by inheritance from the deceased spouse "in whom title to real property constituting a homestead . . . is vested," is provided by § 5627, Comp. Laws, 1913, referred to in the opinion; but no matter what argument is advanced for the construction given in the opinion in this case, the cold fact remains that we have no constitutional or statutory

provision giving to a single person, without dependents, a homestead *exemption in his own fee estate.* This was recognized by Justice Robinson in O'Hare v. Bismarck Bank, *supra,* in this language: ·

"Thus it is apparent that there are two classes of homesteads, and some courts have fallen into error by failing ·to note the distinction between the title to real property with a homestead exemption, and a homestead by inheritance without any fee title."

A married man with family, "the homestead status having been established during his married life," lost that ·homestead right by being divorced by his wife, the latter being given the custody of their minor child and he having no other dependents, this notwithstanding that the court decreed that he pay a stated monthly sum for the support of the child: ". . . it does not follow that it remained his homestead, and under § 5070 (now § 5626, Comp. Laws, 1913) it could not so remain, as he was not the head of a family as therein defined." Holcomb v. Holcomb, 18 N. D. 561, 120 N. W. 547, 21 Ann. Cas. 1145.

That the majority opinion is in accord with the construction of many able courts cannot be questioned. Their reasoning is based largely on the sympathies of the particular case, disregarding the law, a fair example of which is found in Barney v. Leeds, 51 N. H. 253, 277:

"At last the wife dies, and the father is left alone in the dwelling which he has always called his home, and which is endeared to him by fondest associations and by sacred memories. He is too old and feeble to acquire another. Shall he be turned out of the old homestead because of the inevitable fate which has deprived him of his wife?"

Or the franker statement in Stanley v. Snyder, 43 Ark. 429:

"The reason assigned is not very satisfactory, or, at most, is one to be addressed to the political department of the government. So that the decision seems to savor of what Jeremy Bentham calls 'judge-made law.' Yet it has been generally followed. . . . The Constitution which contains our homestead statute has not in express terms anticipated and provided for every possible phase of the question. It therefore devolves upon the courts to construe and apply the law to new cases as they arise. Interpreting the law according to its spirit, and following the current adjudications, we hold, though with some hesitation, that, when the association of persons which constitute the family is broken up, whether by separation or the death of some of the mem-

bers, the right of homestead continues in the former head of the family, provided he still resides at his old home."

The Supreme Court of the United States, in Edwards v. Kearzey, 96 U. S. 595, 604, 24 L. ed. 793, 797, well said: " 'Policy and humanity' are dangerous guides in the discussion of a legal proposition. He who follows them far is apt to bring back the means of error and delusion. The prohibition contains no qualifications and we have no judicial authority to interpolate any. Our duty is simply to execute it,"—this with reference to the impairment of the obligation of contract, and which should be just as applicable to "extra-statutory" homesteads. The statutes vary in many cases. As is said in the résumé of the L.R.A. note to Weaver v. First Nat. Bank, 76 Kan. 540, 123 Am. St. Rep. 155, 94 Pac. 273, found in 16 L.R.A.(N.S.) 115: "In a number of these cases it was not unreasonable to so construe the particular statute while in others the courts have sought in terms of rhetoric to ascribe to the legislature a liberality probably never intended." The views expressed in the following quotations appeal to my judgment:

"The leading idea, upon which the Constitution and statute are both predicated, is the protection of the family. To carry out this intent, the homestead of the head of the family is protected from forced sale. But unless the person is the head of the family, the right of homestead cannot exist. And, if the privilege is an incident to a certain state, and that state itself ceases, why should not the incident fall with it? As the primary object of the law was the protection of the family, when the family ceases to exist the reason for privilege is gone; and why should not the privilege itself also cease?" Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304.

In Hill v. Franklin, 54 Miss. 632, the Court said:

"There can be no more reason for holding that a man who has lost his family shall continue to preserve an exempt homestead because he once had a family than for saying that the house which has once been exempt while occupied as a homestead shall continue to be exempt although totally abandoned as a residence. It is as illogical to say that the exemption shall continue after the family has ceased as to say that it can exist before the family comes into existence."

See also: Santa Cruz Bank v. Cooper, 56 Cal. 339; Johnson v.

Little, 90 Ga. 781, 17 S. E. 294; Cooper v. Cooper, 24 Ohio St. 488; Galligar v. Payne, 34 La. Ann. 1057; Fullerton v. Sherrill, 114 Iowa, 511, 87 N. W. 419; Herrin v. Brown, 44 Fla. 872, 103 Am. St. Rep. 182, 33 So. 522; Jones v. McCrary, 123 Ga. 282, 51 S. E. 349; Waples, Homestead & Exemptions, chap. 3.

With the finding of the majority that there was no abandonment of the premises by plaintiff, I am in accord, but I am unable to agree with the opinion otherwise.