JACOB SCHAF, Appellant, v. CLARK W. COREY, Respondent.

(196 N. W. 502.)

**Homestead — husband cannot waive or forfeit wife's homestead rights.**

1. The husband cannot waive or forfeit the homestead rights of his wife.

**Homestead — facts held insufficient to make question of abandonment one for jury.**

2. For reasons stated in the opinion it is *held* that the evidence was wholly insufficient to establish an abandonment of a homestead, and that the trial court ruled correctly in setting aside a verdict of a jury finding such abandonment, and in ordering judgment notwithstanding the verdict.

Opinion filed December 8, 1923.

Note.—(1) Wife's rights in homestead as affected by waiver by husband, see 13 R. C. L. 657.

(2) What constitutes abandonment of homestead, see note in 5 A.L.R. 259; 13 R. C. L. 647; 3 R. C. L. Supp. 69; 4 R. C. L. Supp. 825; 5 R. C. L. Supp. 705.

Homesteads, 29 C. J. § 356 p. 940 n. 81; § 382 p. 952 n. 77; § 402 p. 961 n. 50 New; § 410 p. 965 n. 54, 56.

From a judgment of the District Court of Morton County, *Berry,* J., plaintiff appeals.

Modified and affirmed.

*L. H. Connolly,* for appellant.

*C. L. Crum, T. J. Krause,* and *Langer & Nuchols,* for respondent.

The intention with which one removes from his residence is the determining factor in deciding whether his absence amounts to an abandonment of the residence as a homestead, and the duration of such absence is immaterial. Edmonson v. White, 8 N. D. 72; Smith v. Spafford, 16 N. D. 208; Healy v. Bismarck Bank, 30 N. D. 628; Rosholt v. Mehus, 3 N. D. 513.

Where a married woman leaves the home of herself and husband, the title to which was in the husband, and remains away nearly three years before claiming any homestead interest in the property, but the husband remains in constant occupancy of the land, keeping his home thereon, such absence alone will not constitute abandonment by the wife of her homestead rights. Rosholt v. Mehus, 3 N. D. 513.

So long as the wife is living, nothing the husband can do, or suffer to be done, will estop either of them from claiming the homestead. Withers v. Love, 83 Pac. 204.

"The homestead exemption is declared in favor of the head of the family in representative capacity, and is not intended only for the benefit of the individual who stands in that relation, but is for the protection and preservation of the home for the benefit of the family as a whole. The homestead of a family in this state is absolutely exempt from attachment or mesne process, and from levy and sale upon execution, and from any other final process issued from any court and such exemption is not presumed to be waived by the failure or neglect of the head of the family to expressly claim it." Dieter v. Fraine, 20 N. D. 485.

The general rule that only nominal damages are recoverable in actions for breach of a covenant where plaintiff has sustained no actual loss applies with reference to actions for breach of a covenant against encumbrances. 15 C. J. 1326.

If a valid mortgage exists on the land when the deed containing the covenant is delivered, a cause of action for a breach of such covenant arises immediately. The existence of the cause of action for such breach, as such, alone entitles the purchaser to no more than nominal damages, unless he has suffered greater damages by paying the mortgage. In that event, his damages are the amount necessarily paid by him to remove such mortgage, not exceeding the consideration money. Dahl v. Stakke, 12 N. D. 325.

The covenant against encumbrance does not extend to any encumbrance which the grantee has either expressly or impliedly assumed, and the assumption of an incumbrance by a grantee may be by parol. Fitzer v. Fitzer, 29 Ind. 458; Gill v. Ferrin, 71 N. H. 421; Weld v. Nichols, 17 Pick. 538.

CHRISTIANSON, J. This is an action for deceit. The jury returned a verdict in favor of the plaintiff. The defendant moved for judgment notwithstanding the verdict. The motion was granted, and the plaintiff has appealed.

The controversy before us arose out of a certain transaction wherein the plaintiff traded an Overland automobile to the defendant for a house and lot in the town of Trenton, in Williams county, in this state. The plaintiff claims that the defendant represented to him that such realty was free and clear of all encumbrances; that the warranty deed which plaintiff received from the defendant and his wife contained a covenant to that effect; that the plaintiff in reliance upon the representations of the defendant exchanged the automobile for said real property, and accepted the deed therefor, and delivered the automobile to the defendant; that such representations on the part of the defendant were false and untrue; that in truth and in fact the premises were not free from encumbrances, but that there were then in existence certain judgments against the defendant and his wife aggregating $650.48, and taxes in the sum of $4.70, which judgments and taxes constituted valid liens against the premises. The plaintiff alleges that the real property in question was represented to be, and if free of encumbrances would have been, worth the sum of $800. The plaintiff therefore demands judgment for the damages which he claims to have sustained by reason of the false representations, namely, the difference in value be-

tween the premises as represented and the value thereof subject to the outstanding liens against it. The defendant in his answer admitted that the trade was made as alleged by the plaintiff, but denied the allegations of the complaint relating to the judgments and the taxes.

The evidence upon the trial clearly established the existence of the judgments and taxes alleged in the complaint. The evidence further established, however, that the plaintiff had not paid any of the judgments, and that he had not been disturbed in his possession of the premises by any of the judgment creditors, but that the plaintiff had paid the taxes which, with interest, aggregated $5.02. The defendant claims, and, upon the trial, introduced evidence tending to show, that the premises in controversy when sold and conveyed to the plaintiff were, and for a long period prior thereto had been the homestead of the defendant and his family and that consequently the judgments were in no manner a lien upon the premises. The plaintiff conceded that the premises were at one time the homestead of the defendant and his family, but contends that there had been an abandonment of such homestead prior to the sale of the premises and prior to the execution and delivery of the deed to the plaintiff and that consequently the judgments were and are liens against the premises. The trial court submitted to the jury the question of whether the homestead had been abandoned. The jury both by its general verdict and in answer to a special interrogatory found that the premises were not the homestead of the defendant and his wife "from the time the judgments mentioned in the complaint were filed in the office of the clerk of the district court in and for Williams county, and up to and including the time of the execution and delivery of the deed to the plaintiff, mentioned in the complaint." Upon plaintiff's motion for judgment notwithstanding the verdict the trial court held that this finding of the jury was contrary to the evidence. The trial court further found that the homestead had not been abandoned, but that at the time the deed was executed and delivered to the plaintiff, the premises still were a homestead and hence not subject to the liens of the various judgments. The controlling question presented on this appeal is whether the trial court was correct in so holding, and in ordering judgment in favor of the defendants notwithstanding the verdict. In our opinion the trial

court was correct in holding that the verdict of the jury upon the question of abandonment was contrary to the evidence.

According to the undisputed evidence, defendant's wife, Bessie Corey, was the owner in fee of the premises in controversy, and the defendant and his wife established their residence in the dwelling house in controversy in 1905 and the same then became and thereafter continued to be their home. In 1916 the defendant was convicted of crime and sentenced to imprisonment in the state's penitentiary at Bismarck. He remained in the penitentiary until some time in the spring of 1919 when he was paroled under an arrangement whereby he was employed by a certain rancher in Morton county in this state. On or about June 20th, 1919, the defendant's wife and two minor children came from their home at Trenton to visit the defendant at the place where he was employed. The defendant's wife brought with her a trunk containing certain clothing; and some bed springs and mattresses, but all the other furniture was left in the house at Trenton, and upon their leaving the house was locked and in no manner occupied by anyone else. The trade between the plaintiff and the defendant was made about a week after the arrival of defendant's wife. The plaintiff offered evidence tending to show that the defendant had made certain statements to the effect that he would never go back to Trenton. The defendant denied that he made such statements. And there is no showing that such statements were ever communicated to defendant's wife. She denied that they were communicated, and she testified positively that she had no knowledge of any intention on the part of her husband to sell their home and change the family domicil, and that when she left Trenton and on her arrival in Morton county she had no intention of changing such domicil or of abandoning her home, but on the contrary intended to return to Trenton and continue to make her home there. Manifestly the enforced absence of the defendant for the purpose of serving a prison sentence was no evidence of abandonment of the homestead, even on his part; and it is undisputed that the premises continued to be the home of the family during the time he was incarcerated in the penitentiary. The defendant, although on parole, was still under sentence at the time the trade was made. And in any event the defendant could not waive or forfeit the homestead right of his wife. 21 Cyc. 612; Comp. Laws 1913, §§ 5608, 5622 and 5623. And in our opinion

the acts of the defendant's wife were not of themselves such as to justify a finding of abandonment. In other words, we are of the opinion that when the evidence in the case is considered as a whole there is not sufficient evidence from which reasonable men, in the exercise of reason and judgment, can conclude that defendant's wife intended to and did change her residence from the house occupied by her and her children at Trenton at any time interim the entry of the judgment and sale of the premises to the plaintiff. The trial court, however, should not have ordered a dismissal of the action, for it appears that unpaid taxes in the sum of $4.70 were a lien on the premises at the time the sale was made and that plaintiff later paid these. Hence, plaintiff has shown an injury to that extent as these taxes were a lien upon the premises regardless of whether the premises were or were not a homestead.

The judgment appealed from should therefore be modified so as to award the judgment in favor of the plaintiff and against the defendant for the amount of the taxes paid, and interest from the date of payment. It is so ordered. Neither party will recover costs.

BRONSON, Ch. J., and JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.